RILEY, Circuit Judge,
dissenting.
I respectfully dissent. The majority’s decision to reverse the district court’s summary judgment because jury questions remain regarding (1) “whether the nurses were deliberately indifferent to Croft’s known serious medical need,” supra at 956; and (2) “whether [Dr. Hampton placed] Croft ... at substantial risk by the delay,” supra at 957, misses the mark. The decision is contrary to the facts and is an incomplete analysis of the applicable law.
Croft’s section 1983 claims against the nurses and Dr. Hampton are all properly evaluated as delays in treatment. In each instance the basis of the complaint is not that care was not rendered, but that care was not rendered in a timely fashion. “When the inmate alleges that a delay in medical treatment rises to the level of an Eighth Amendment violation, the objective seriousness of the deprivation should also be measured by reference to the effect of delay in treatment.” Laughlin v. Schriro, 430 F.3d 927, 929 (8th Cir.2005) (citation and internal quotation marks omitted). “To establish this effect, the inmate must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment.” Id. (citation and internal quotation marks omitted).[1] Croft has not offered any verifying medical evidence as to the detrimental effects of the alleged delays in treatment. Croft’s claims must fail. See id.
Croft broke his right leg sliding into second base during a prison softball game *958 on August 9, 2002. The infirmary was called immediately at 6:58 p.m. The nurses arrived on the scene within minutes. The nurses did not carry a splint with them. Croft complains the nurses did not stabilize his leg. When the nurses attempted to move Croft onto a yellow backboard, Croft’s “foot completely spun over backwards and hit the dirt.” The nurses slid the board under Croft, and then lifted the board and Croft onto a golf cart which then transported Croft to the infirmary, a trip that took about one and a half minutes. At the infirmary, Croft was transferred from the board to a bed.
Upon arriving at the infirmary, Nurse Pamela S. Tanner immediately called Dr. Hampton, the on-call physician, who directed that an ambulance be called and Croft’s leg be splinted. The nurses assessed Croft’s vascular and neurological functions which were intact. The nurses called for an ambulance at 7:20 p.m. The ambulance was dispatched at 7:40 p.m. The ambulance arrived at the infirmary at 8:00 p.m. Once at the infirmary, an emergency medical technician (EMT) assessed Croft, checking Croft’s vital signs at 8:22 p.m., administering morphine to Croft at 8:27 p.m. for pain relief and immobilizing the broken leg with an air cast. The ambulance departed the infirmary at 8:35 p.m. and arrived at the Pike County Memorial Hospital emergency room (ER) at 8:55 p.m.
At the ER, Croft was examined by Dr. Paul J. Weiland (Dr. Weiland), who first saw Croft at 9:05 p.m. Croft’s leg was x-rayed. The x-ray revealed the bones were shattered in multiple places. Croft was diagnosed with a comminuted fracture of the right distal tibia and fibula. Croft’s neurologic and vascular functions were intact. Because no orthopedic services were available at the hospital, Dr. Weiland did not recommend admitting Croft because “[w]e did not have orthopedic services available. [It w]ould have been inappropriate for us to take care of him.” Dr. Weiland recommended transferring Croft to another facility for an orthopedic evaluation and possible surgery, but acknowledged, “It’s not necessarily where they would have to operate ... at two o’clock in the morning after he got there, but where he would probably have to say be operated on the next morning.”
Dr. Hampton considered Dr. Weiland’s recommendation, but determined Croft should be returned to the prison and admitted to the transitional care unit (TCU). Croft left the ER early Saturday morning and was admitted to the TCU at 2:15 a.m. Saturday morning. Croft stayed in the TCU until Monday when he was scheduled for an orthopedic consult with Dr. Thomas R. Turnbaugh (Dr. Turnbaugh). While in the TCU, Croft was given medication for his pain, and the vascular and neurological function in his leg was checked every four hours with directions that a doctor be contacted immediately if Croft “is unable to wiggle toes, or loses pedal pulse.” On Monday morning, Croft’s toes were warm with good coloring. Croft was able to wiggle his toes, and he had a “good strong pedal p[u]lse.” Croft left the TCU at 12:15 p.m. on Monday August 12, 2002, en route to his orthopedic evaluation with Dr. Turnbaugh. Croft was admitted to Capitol Regional Medical Center in Jefferson City, Missouri, where he was first evaluated by Dr. Thomas Kramer (Dr. Kramer) and then reevaluated by Dr. Turnbaugh who performed surgery later that day to repair the fractures. Two days later, on Wednesday August 14, 2002, Croft was discharged and returned to the prison infirmary.
Croft alleges the nurses violated his Eighth Amendment rights by failing to splint his leg in a timely fashion. Viewing the record in the light most favorable to *959 Croft, the evidence clearly establishes Croft’s leg was splinted within one and a half hours of the injury and within about one hour of when the nurses were directed to splint the leg by Dr. Hampton. The leg splint was not denied, but only delayed. As such, Croft is required to demonstrate the objective seriousness of the delay in splinting his leg by placing medical evidence in the record which verifies the objective seriousness of the one and a half hour delay. Croft has not done so. No medical evidence exists in the record establishing Croft suffered any vascular or neurological damage due to the broken leg, much less any vascular or neurological damage attributable to the one and a half hour delay in applying a splint. All of the evidence reflects Croft’s vascular and neurological functions always remained intact. With no medical evidence demonstrating any medical ill effects from the one and a half hour delay in splinting his leg, Croft’s Eighth Amendment claim against the nurses fails.
Similarly, Croft’s Eighth Amendment claim against Dr. Hampton also fails, because there is no medical evidence in the record evidencing either any deliberate indifferent and harmful delay or any negative effects to Croft from a maximal delay of sixty hours[2] in having Croft’s injury evaluated by an orthopedic surgeon. This is not a case where Croft was denied access to an orthopedic surgeon, or denied necessary surgery to his leg. Croft’s claim against Dr. Hampton rests solely on an allegation that proper evaluation and treatment was delayed, resulting in a violation of Croft’s Eighth Amendment rights. The delay occurred over the weekend to the next business day. Dr. Weiland opined that the proper standard of care called for the evaluation and treatment of Croft’s injury in “a timely fashion” or “in a reasonable period of time.” Dr. Weiland did not specify what timely or reasonable meant.
Croft submitted no medical evidence showing any negative effect of the delay. Dr. Weiland counseled in favor of an immediate transfer from the ER to a facility equipped to conduct an orthopedic evaluation. Dr. Weiland’s opinion discusses the potential risks of delay. The doctor’s testimony does not establish or even speculate on any negative effects of the delay on Croft. Croft completely fails to demonstrate his delay of a maximum of two and a half days in having Croft’s injury evaluated by an orthopedic surgeon resulted in any ill effects to Croft. The record reflects (1) the surgery was conducted on the same day as the orthopedic evaluation, (2) Croft’s vascular and neurologic functions were always intact and (3) the surgery was deemed a success by the surgeon. Viewed in the light most favorable to Croft, the record lacks any medical evidence demonstrating the objective seriousness of any deprivation, measured in reference to the effect of the delay.
This record hardly supports a claim of negligence, does not sustain a claim of gross negligence and certainly does not bear the much heavier burden of an Eighth Amendment deliberate indifference claim. See Popoalii v. Corn Med. Servs., 512 F.3d 488, 499 (8th Cir.2008) (noting “[f]or a claim of deliberate indifference, the prisoner must show more than negligence, more even then gross negligence [because] .... [deliberate indifference is akin to criminal recklessness, which de *960 mands more than negligent misconduct.” (citations and internal quotation marks omitted)). Prison nurses and physicians should not so readily be forced to run the litigation gauntlet, as the majority proposes here, which further increases the difficulty of prisons recruiting medical professionals.
The district court’s grant of summary judgment for the defendants should be affirmed in all respects.

. The majority correctly cites Laughlin and Coleman v. Rahija, 114 F.3d 778, 785 (8th Cir.1997), supra at 957, but does not apply their controlling precedent.

. Croft asserts the delay between injury and orthopedic evaluation was five days, but the medical records unambiguously contradict Croft's assertion. At most, the delay in obtaining an orthopedic consult was sixty hours (two and a half days), measuring from t In-time Croft left the ER early Saturday morning to the time he was evaluated by Dr. Kramer on Monday afternoon.